UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE PEDRO ORTEGA,<br><br>Petitioner,<br><br>v.<br><br>KRISTI NOEM, et al.,<br><br>Respondents. | No. 1:25-cv-01663-DJC-CKD<br><br><br><br>ORDER |

This matter is before the Court on Petitioner Jose Pedro Ortega's Motion for Temporary Restraining Order filed on November 26, 2025. (Mot. TRO (ECF No. 2).) For the reasons explained below, the Court GRANTS the Motion.

**BACKGROUND**

On November 26, 2025, Petitioner Jose Pedro Ortega, a noncitizen, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging his detention by United States Immigration and Customs Enforcement ("ICE"). (Pet. (ECF No. 1).) Petitioner brings the following claims in his petition: violation of substantive and procedural due process under the Fifth Amendment and unlawful arrest in violation of the Fourth Amendment to the United States Constitution. (*Id.*) Concurrently with his petition, Petitioner filed a Motion for Temporary Restraining Order. (*See generally* Mot. TRO.) Petitioner asks this Court to order Respondents to

1

immediately release him on his own recognizance and enjoin them from re-detaining him absent further order from this tribunal; or, in the alternative, to order Petitioner's immediate release from Respondents' custody and enjoin Respondents from re-detaining him unless they demonstrate at a pre-deprivation bond hearing, by clear and convincing evidence, that he is a flight risk or danger to the community, such that his physical custody is required.  (*Id.* at 2.)  The parties stipulated to an alternative briefing schedule, which the Court granted.  (ECF No. 8.)  Respondents timely filed an Opposition on December 3, 2025.  (Opp'n (ECF No. 9).)  Petitioner timely filed a Reply on December 4, 2025.  (Reply (ECF No. 10).)

Petitioner, a citizen and national of Mexico, entered the United States with his family at the San Ysidro Port of Entry on November 10, 2018.  (Robinson Decl. (ECF No. 2-1) ¶ 5; *see generally* Notice to Appear ("NTA") (ECF No. 9-1), Ex. 2.)  Petitioner presented at the Port of Entry without valid entry documentation.  (Jerome Decl. (ECF No. 9-1) ¶ 2, Ex. 2.)  On November 12, 2018, Petitioner was served with a Form I-862, Notice to Appear, on November 12, 2018, pursuant to Immigration and Nationality Act ("INA") § 212(a)(7)(A)(i)(I).  (*Id.* ¶ 6, Ex. 2.)  The following day, Petitioner was enrolled in the Intensive Supervision Appearance Program ("ISAP").  (*Id.* ¶ 7.)  Petitioner was paroled into the United States on November 13, 2018, pursuant to 8 C.F.R. § 212.5.  (*See generally* Notice of Release (ECF No. 9-1), Ex. 3.)  Petitioner and his family were fleeing Mexico after Petitioner and his father were kidnapped and the family received death threats on account of Petitioner's sister's political activities.  (Robinson Decl. ¶ 6.)  Petitioner's family unit includes his wife Sandra Garcia Carranza and three minor children: Jose Ortega Garcia, Danna Ortega Garcia, and Pedro Ortega Garcia who are currently age 15, 12, and 10, respectively.  (*Id.* ¶ 5.)  Because Petitioner was beaten and kidnapped, his claims for asylum are central to those of his family unit.  (*Id.* ¶ 7.)

Upon entry into the United States, Petitioner and his family were released from the custody of Customs and Border Patrol on an Order of Own Recognizance

("OREC") as a family unit and their removal proceedings have also been as a family unit. (*Id.* ¶ 6.) Upon release, Petitioner was given a GPS monitoring bracelet, which was removed after two years. (*Id.* ¶ 8.) Petitioner has been out of custody on his own recognizance for at least seven years. (*Id.* ¶ 9.)

On September 30, 2025, Petitioner was called in to meet with ICE. (*Id.* ¶ 10.) He was detained at that time, but no one else in his family unit was detained. (*Id.*) Petitioner is currently being held at the Mesa Verde Detention Facility in Bakersfield, California. (Pet. ¶ 13; Jerome Decl. ¶ 1.) Respondents contend that Petitioner violated the terms of his parole by failing to appear at certain regularly scheduled check-ins.[1] (Jerome Decl. ¶ 7; *see also* Record of Deportable/Inadmissible Alien (ECF No. 9-1), Ex. 4 (asserting "[Petitioner] violated the conditions of the . . . [alternatives to detention] program")). Petitioner has no criminal history. (*Id.*, Ex. 4; Robinson Decl. ¶ 12, Ex. C.) He applied for asylum and that application remains pending. (Pet. ¶ 7; Mot. TRO at 5.)

## LEGAL STANDARD

The standards for issuing a temporary restraining order and a preliminary injunction are "substantially similar." *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain preliminary injunctive relief, Plaintiff must show (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "[I]f a plaintiff can only show that there are serious questions going to the merits – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends*

---

[1] The number of alleged missed check-ins appears to be in dispute. Respondents variously assert three and four missed check-ins in their briefing and supporting declaration, but the attached government records fail to specify the nature and number of any missed check-ins. (Opp'n at 2; Jerome Decl. ¶ 7.)

3

*of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

## DISCUSSION

**I. Respondents' Statutory Argument**

The Court first addresses Respondents' statutory argument raised in the Opposition. Petitioner seeks injunctive relief from immigration detention by asserting his constitutional rights. (*See generally* Mot. TRO.) Respondents contend that Petitioner is an "applicant for admission" and subject to mandatory detention under 28 U.S.C. § 1225(b)(2). (Opp'n at 5.) Respondents rely on the doctrine of "entry fiction," reasoning that because Petitioner is an "applicant for admission," he is legally deemed to be stopped at the border even though he has been paroled in the country for several years. (*Id.* (drawing from *Barrera-Echavarria v. Rison*, 44 F.3d 1441, 1450 (9th Cir. 1995) (en banc).) In other words, according to Respondents, because Petitioner's legal status is circumscribed by the statutory provision requiring mandatory detention under § 1225(b)(2), the Due Process Clause does not apply. (*Id.*)

This Court rejects this narrow statutory reading. The Ninth Circuit has held that Fifth Amendment due process protections "'apply to all persons within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent' and to immigration detention as well as criminal detention." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) (quoting *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)). In any event, Respondents' own records, (*see generally* Notice of Release), state that Petitioner was granted parole under 8 C.F.R. § 212.5, which provides that certain aliens may be paroled on "a case-by-case basis for urgent humanitarian reasons or significant public benefit, provided the aliens present neither a security risk nor risk of absconding . . . .," 8 C.F.R. § 212.5 (internal quotation marks omitted). Thus, assuming without deciding that Petitioner is governed by the framework of mandatory detention under § 1225(b)(2), once Petitioner was granted parole at the port of entry, it reflected a federal determination that he did not pose a

flight risk or a danger to the community.  Thus, any future parole revocation by the government must follow certain procedural parameters as set out in the regulations. *See, e.g.*, *E.A.P.C. v. Wofford*, No. 1:25-cv-01546-JLT-CDB, 2025 WL 3289185, at *6 (E.D. Cal. Nov. 25, 2025) (collecting cases explaining processes for revocation of parole of noncitizens); *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1196–97 (N.D. Cal. 2017) (discussing parole revocations and government's practice to "generally only re-arrest[ ] an alien pursuant to § 1226(b) after a material change in circumstances"); *Salcedo Aceros v. Kaiser*, No. 25-cv-06924-EMC, 2025 WL 2637503, at *3 (N.D. Cal. Sept. 12, 2025) (same).  Accordingly, for Petitioner's parole revocation to be constitutionally adequate, the government must show that there has been changed circumstances warranting his re-arrest.  After first arguing that this preliminary showing is not required, Respondents alternatively contend that changed circumstances exist in this case because "Petitioner repeatedly failed to comply with the conditions of his conditional release."  (Opp'n at 9.)  While Respondents provide little evidence to support this assertion, that is beside the point: it may be a justification that would warrant detention, but as discussed below due process requires that assertion be tested at a hearing that meets constitutional requirements.

Having established that Petitioner is entitled to procedural protections notwithstanding Respondents' statutory claim, the Court turns to the *Winters* factors.

## II. Likelihood of Success on the Merits

As noted, Petitioner brings three claims in his habeas petition, alleging violations of substantive due process and procedural due process under the Fifth Amendment and a violation of the Fourth Amendment for unlawful arrest.  The Court finds that Petitioner is likely to succeed on the merits of the procedural due process claim.

Petitioner contends that his procedural due process rights were violated when his release on recognizance was revoked "without any notice or any opportunity to contest his detention before a neutral arbiter."  (Mot. at 4.)

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. *Hernandez*, 872 F.3d at 990. As noted, the Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas*, 533 U.S. at 693. These due process rights extend to immigration proceedings, including final deportation orders. *Id.* at 693-94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process.").

As has been detailed by numerous other courts, individuals released from ICE custody on parole have a protected interest in remaining out of custody. *See Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032–33 (N.D. Cal. 2025) (surveying cases). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *Rico-Tapia v. Smith*, ---- F. Supp. 3d ----, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) and *Morrissey v. Brewer*, 408 U.S. 471, 481–82 (1972)). Petitioner was released on parole with reporting requirements in 2018 on his own recognizance. (Pet. ¶¶ 3-4.) Since that time, he has remained out of custody, without incident for at least seven years. (*See id.* ¶¶ 6-8.) Petitioner has a clear liberty interest in his continued freedom. The Court must thus determine what process is due.

Because such a liberty interest has been established, the Court applies the balancing test in *Mathews v. Eldridge*, 424 U.S. 319 (1976). The Court finds that the Mathews analysis conducted in *Pinchi v. Noem* is applicable here. *See* 792 F. Supp. 3d at 1032–33. Specifically, Petitioner has a substantial private interest in maintaining his out-of-custody status. He has been released on his own recognizance with his family for more than seven years without apparent incident. See *Valencia Zapata v. Kaiser*, ---- F. Supp. 3d ----, 2025 WL 2741654, at *8 (N.D. Cal. Sept. 26, 2025) (noting

that release under section 1226 "implied a promise" that petitioners would not be re-detained so long as they abide by the terms of their release.)  The risk of erroneous deprivation here is high, and indeed realized, as Petitioner has not received a bond hearing, has no criminal history, and has been in detention since September 30, 2025.  On this point, neither the government nor Petitioner has had any opportunity to determine whether there is a valid basis for Petitioner's detention.  Nor has the government provided significant evidence to support its contention that Petitioner violated the terms of his release or is a flight risk or danger to the community.  Petitioner was detained after more than seven years in the community and lack of any criminal record.  Lastly, Respondents' interest in detention is low as the effort and costs required to provide Petitioner with procedural safeguards are minimal.

**III. Remaining Factors**

The remaining factors similarly support granting Petitioner's Motion.

Petitioner will suffer irreparable harm in the absence of preliminary injunctive relief.  "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (citation omitted).  Moreover, the Ninth Circuit has recognized the "irreparable harms imposed on anyone subject to immigration detention" including "the economic burdens imposed on detainees and their families as a result of detention." *Hernandez*, 872 F.3d at 995.  Petitioner has thus established irreparable harm.

The final two *Winter* factors merge when the government is the nonmoving party. *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (citations omitted).  Public interest concerns are also implicated as "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002 (internal quotations and citations omitted).  "The government also cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Baird*, 81 F.4th at 1042 (internal quotations and citations omitted).

Moreover, the "public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Pinchi*, 792 F. Supp. 3d at 1037.

Here, the harm to Petitioner is significant as he has experienced prolonged ICE detention, separated from his family.  The harm to Respondents is minimal as the only potential hinderance the government may experience is a short delay in re-detaining Petitioner.  The government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).  Further, as noted, there is no meaningful argument or evidence that Petitioner is now a risk of flight or a danger to the community.  For these reasons, the Court concludes that the equities and public interest weigh in Petitioner's favor.

**IV. Burden of Proof**

As due process requires that Petitioner be released and not be re-detained without providing him with a pre-detention bond hearing before a neutral immigration judge, the Court next determines the appropriate burden.  In *Pinchi*, the court ruled that the government bore of burden of proof in a pre-deprivation hearing as the government had not asserted any legitimate interest that would support arresting a paroled petitioner who had been released pursuant to a determination that she was not a flight risk or danger to the community.  792 F. Supp. 3d at 1036.  As in *Pinchi* and as detailed above, the government has not provided any evidence to demonstrate that Petitioner is a flight risk or danger to the community or has violated any other terms of his parole.  Accordingly, the government must demonstrate at any pre-deprivation hearing, by clear and convincing evidence, that he is a flight risk or a danger to the community and that no conditions other than his detention would be sufficient to prevent such harms.  *Id.*; *see also J.S.H.M. v. Wofford*, 2025 WL 2938808, at *17 (E.D. Cal. Oct. 16, 2025) (analyzing *Pinchi*).

**V. Bond**

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Court has "discretion as to the amount of security required, *if any*," and it "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). Because the "the [Government] cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations," *Zepeda*, 753 F.2d at 727, the Court finds that no security is required here.

**ORDER**

In accordance with the foregoing, IT IS HEREBY ORDERED that:

1. Petitioner's Motion for Temporary Restraining Order (ECF No. 2) is GRANTED:

    a. Petitioner shall be released immediately from Respondents' custody. Respondents shall not impose any additional restrictions on him, such as electronic monitoring, unless that is determined to be necessary at a future pre-deprivation/custody hearing. Respondents shall provide a status report confirming Petitioner's release.

    b. Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, which include, at a minimum, pre-deprivation notice— describing the change in circumstances necessitating his arrest, and detention, and a timely hearing. At any such hearing, the government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the

community or a risk of flight, and Petitioner shall have his counsel present.

2. Respondents are ORDERED TO SHOW CAUSE on or before December 15, 2025, why a Preliminary Injunction should not be issued on the same terms as this Order.  Petitioner may file a reply on or before December 18, 2025, at which time the matter will be deemed submitted.

IT IS SO ORDERED.

Dated:  **December 7, 2025**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE